Beth Ann LEA, and Saul
E. Lea, Plaintiffs,

v.

M.A. KIRBY, Individually and in his Official Capacity as Deputy of the Caswell County Sheriff's Department; and G.A. Brandon, Individually and in his Official Capacity as Deputy of the Caswell County Sheriff's Department, Defendants.

No. 1:00CV00594.

United States District Court,
M.D. North Carolina.

Sept. 27, 2001.

Wallace Wayne Bradsher, Jr., Butner, NC, for plaintiffs.

James Redfern Morgan, Jr., Womble Carlyle Sandridge & Rice, Winston-Salem, NC, for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On August 30, 2001, the magistrate judge filed his recommendation in the

above-entitled case recommending that Defendants' motion for summary judgment be granted on all of Plaintiffs' claims except Plaintiff Saul E. Lea's individual capacity claim for false arrest under 42 U.S.C. § 1983 ("Section 1983") and his claims for false arrest and malicious prosecution under North Carolina law. On September 6, 2001, Defendants Kirby and Brandon in their individual capacities filed objections to the recommendation of the magistrate judge to the extent it recommended denying their motion for summary judgment on Saul E. Lea's Section 1983 claim and state tort law claims.

The magistrate judge found that the Defendants did not have probable cause to arrest Saul E. Lea until they found a partially consumed rock of crack cocaine wrapped in aluminum foil in an ashtray in Saul E. Lea's bedroom. Based on the Plaintiffs' contention that this evidence was planted by the officers in Saul E. Lea's bedroom, the magistrate judge found that this gave rise to a factual issue precluding summary judgment.

Based on the undisputed facts and excluding for the purposes of their objections the rock of crack cocaine found in Saul E. Lea's bedroom, Defendants contend that probable cause, or at a minimum arguable probable cause, existed for Saul E. Lea's arrest. The court agrees. For the following reasons the court will grant Defendants' summary judgment motion on Saul E. Lea's Section 1983 claim and state tort law claims.

### FACTS

The following facts are undisputed, except where noted. At the time of the events leading to Plaintiffs' allegations, Defendants Kirby and Brandon were deputies in the Caswell County Sheriff's Department. In early 1998, Defendants worked together as narcotics officers. The Plaintiffs, who are brother and sister, had not been employed for several years leading up to the subject events.

The Defendants received information from a variety of sources that illegal drugs were being sold at the Plaintiffs' residence, a small mobile home co-owned by Plaintiffs at the end of a dead-end road. First, Defendants received information from a North Carolina Highway Patrol officer that a person who lived near the Plaintiffs' mobile home had reported that he suspected drug activities at the Plaintiffs' residence. The Highway Patrol officer also stated that he personally suspected that drug activity was taking place at the residence based on his observation of vehicles coming and going to the residence containing individuals whom he knew from personal experience to be drug users. Second, Sergeant Henry Fleetwood of the Caswell County Sheriff's Department advised Defendant Brandon that he had been approached by at least three or four concerned citizens who lived near the Plaintiffs' mobile home about activities that they suspected were drug related. Fleetwood stated that these citizens informed him that Beth Ann Lea, Saul E. Lee, and Harold Scott were selling drugs "hot and heavy" at Plaintiffs' mobile home. (Fleetwood Aff., Ex. A). Third, Officer Darrell McLean reported to Defendants that students in the local schools had approached him and told him of drug sales at Plaintiffs' residence. Finally, Officer Eugene Riddick reported that an anonymous caller told him that Plaintiffs and Harold Scott were selling cocaine from Plaintiffs' residence and that Plaintiff Beth Ann Lea kept a bulk quantity of crack cocaine in a jar.

After receiving this information, Defendants checked Plaintiffs' criminal records. This check showed that Beth Ann Lea had been charged with assault with a deadly weapon for shooting one of her brothers.

The search, however, revealed no arrest for Saul E. Lea and no drug-related arrests for either Plaintiff. Plaintiffs allege that they never dealt drugs or possessed drugs in their home.

Defendants next attempted to verify the information. Defendants set up surveillance at the residence of an unidentified neighbor of Plaintiffs. In the course of an hour, they saw "a number" of vehicles go to Plaintiffs' residence, stay for a short time, and leave. (Kirby Aff. at 3). The officers reasonably concluded, based on their years of experience as narcotics officers, that such activity was consistent with drug trafficking.

Nevertheless, Defendants sent a confidential informant, who had proved reliable in the past, to obtain further verification. The informant reported that he had personally witnessed Harold Scott deliver crack cocaine to unknown individuals at the Plaintiffs' residence and that Plaintiff Beth Ann Lea participated in the sales.

Based on the information the Defendants had received, they sought and received a search warrant from a local magistrate. On June 19, 1998, after receiving the search warrant, Defendants and three other officers went to Plaintiffs' residence. As the officers approached, they saw Harold Scott drive a car up to Plaintiffs' residence. The officers arrived immediately after Scott and ordered him to exit his vehicle. Scott responded by fleeing in his car down a path behind Plaintiffs' residence. The officers quickly apprehended Scott, and later recovered a change purse thrown from Scott's car, which contained a quantity of aluminum-foil-wrapped rocks of crack cocaine. The purse was turned over to Defendant Kirby who served as evidence custodian during the search.

After arresting Scott, the police searched Scott's vehicle. The officers found a loaded .25 caliber pistol and notes referring to how Scott had taught Plaintiff Beth Ann Lea to put away some of the money from a sale after she sold and something about an unnamed male who was "going to get the money up" and who had "spend [sic] most of the money." (Pldg. 12 Ex. C).

While other officers were apprehending Scott, Defendant Brandon and another officer legally entered Plaintiffs' mobile home and announced that they had a search warrant. The police immediately found Beth Ann Lea, who informed them that Saul E. Lea was in a back room. The police then brought both Plaintiffs to a couch in the living room before Brandon left to search for the object that Scott had thrown. Once the purse with crack cocaine was found, Defendants returned to Plaintiffs' home. Upon entering Plaintiffs' residence, Beth Ann Lea alleges that she heard Kirby order the crack cocaine to be counted and that she heard the officers count to twelve. Saul E. Lea testified in his deposition that he not only heard the counting, but was in a position to witness it. Saul E. Lea agrees with Beth Ann Lea that an officer counted twelve rocks of crack cocaine out of the purse. Only eleven rocks of crack cocaine are reflected on the inventory sheet.

The police escorted Plaintiffs out of the residence while Brandon's drug dog was used to search the mobile home. Prior to Plaintiff's being removed from the residence, however, one of the officers reported to Defendant Kirby that a partially consumed rock of crack cocaine wrapped in aluminum foil had been found in plain view next to Saul E. Lea's bed. Kirby states that this was logged into evidence. Plaintiffs allege that Defendants planted the crack cocaine in Saul E. Lea's bedroom.

During the search of Plaintiffs' residence, officers also found in the mobile home a .32 caliber semi-automatic pistol

with four rounds in the clip. The officers also found a thirty-round .45 caliber clip and twelve rounds of .38 caliber ammunition in a suitcase in the closet of Saul E. Lea's bedroom. Based on their years of experience, Defendants state that these items are often related to drug activity.

Following the search the police arrested Beth Ann Lea for knowingly and intentionally maintaining a house that was used for keeping and selling controlled substances. The police also arrested Saul E. Lea for possession of crack cocaine. Defendants claim that the charges against Plaintiffs were dropped only after Harold Scott agreed to plead guilty and accept responsibility for all of the drugs.

## DISCUSSION

A. *Section 1983 Claim*

■ Police officers sued in their individual capacity are entitled to immunity from Section 1983 liability for money damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of qualified immunity is to "remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of facts to a jury." *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991).

■ Police officers performing a discretionary function are entitled to immunity from civil damages "unless (1) the officers' conduct violates a federal statutory or constitutional right, and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right." *Milstead v. Kibler,* 243 F.3d 157, 161 (4th Cir.2001). The first inquiry for the court is whether the violation of a constitutional right has

been alleged. *Id.* This is true even when analysis of the non-constitutional issues may resolve the immunity issue more easily. *Id.* at 162. If a plaintiff does allege deprivation of a constitutional right, the court must proceed to determine whether that right was clearly established at the time of the alleged violation. *Id.*

■ The Fourth Amendment requires that a warrantless arrest be based on probable cause. *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998). Probable cause is evaluated based on the totality of the circumstances surrounding the arrest. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Park v. Shiflett,* 250 F.3d 843, 850 (4th Cir.2001). The Supreme Court has stated that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California,* 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

■ Although an officer must show probable cause to make a warrantless arrest, in determining whether or not an officer is entitled to qualified immunity under Section 1983, the issue is whether arguable probable cause exists. *See Hunter v. Bryant,* 502 U.S. 224, 226–27, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (stating that "the reasonableness of defendants' actions is not contingent upon whether probable cause actually existed"); *see also Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (stating that the doctrine of qualified immunity contemplates that law enforcement officials will make the occasional mistake in judgment); *see also McLenagan v. Karnes,* 27 F.3d 1002, 1007 (4th Cir.1994) (stating that an officer is entitled to qualified immunity if he "could have ... believed that his conduct was lawful"). While reasonable minds might disagree as to whether or not probable cause existed

for Saul E. Lea's arrest, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. 1092.

Defendants contend that under the totality of the circumstances there was probable cause to arrest Saul E. Lea at least as an aider and abettor in the illegal drug activity at his residence. This court does not disagree. In fact, it may not have been unreasonable to charge Saul E. Lea, co-owner of the mobile home, with maintaining a place for the sale of controlled substances, as was his sister. For whatever reasons, charges against Plaintiffs were not pursued when Harold Scott accepted responsibility for the drugs.

In this case, the court must determine whether officers Kirby and Brandon acted reasonably under the totality of the circumstances when they determined that probable cause existed to arrest Saul E. Lea. Assuming, *arguendo,* that probable cause did not exist to arrest Saul E. Lea, on the record before the court, the Defendants' actions in arresting Saul E. Lea were a reasonable response to the situation facing them at the time of the arrest. The Defendants had an objectively reasonable belief that Saul E. Lea was violating the law relating to controlled substances, even in the absence of the rock of crack cocaine allegedly found in his bedroom.

The Defendants' decision to arrest Saul E. Lea was reasonable based on the totality of the circumstances and the Defendants are entitled to qualified immunity. First, Saul E. Lea was a co-owner of the single-wide trailer that was the subject of the search warrant and has lived there with Beth Ann Lea for three years. Second, Defendants received reliable information from a number of sources that drug activities were taking place at Plaintiffs' mobile home. Third, the officers conducted surveillance of Plaintiffs' residence and observed activity consistent with drug traf-

ficking. Fourth, a confidential informant reported that he had witnessed the sale of crack cocaine at the Plaintiffs' residence. Fifth, Harold Scott was apprehended on Plaintiffs' property with drugs. Sixth, officers found a note in Harold Scott's vehicle indicating that Beth Ann Lea was selling and referring to an unidentified male. Seventh, guns and ammunition are frequently associated with illegal drug activity. *See United States v. Grogins,* 163 F.3d 795, 799 (4th Cir.1998) (stating that guns and illegal drugs are tightly connected). Finally, as stated by the magistrate judge, the officers clearly had probable cause to arrest Beth Ann Lea as an aider and abettor with respect to the illegal drug activity at the Lea residence. Thus, based on the totality of the circumstances, Defendants had at least arguable probable cause to arrest Saul E. Lea on the same charge and perhaps other charges as well.

### B. *State Tort Law Claims*

Under North Carolina law, a public officer engaged in the exercise of discretionary, governmental duties can be held liable for actions that are "corrupt or malicious." *Smith v. Hefner,* 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952). To demonstrate malice, the plaintiff must show that the public officer committed an act "which a man of reasonable intelligence would know to be contrary to his duty." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984).

Under essentially the same analysis as the Section 1983 claim, the Defendants' actions in arresting Saul E. Lea were not acts "which a man of reasonable intelligence would know to be contrary to his duty" under the circumstances. Thus, the Defendants are entitled to public officer's immunity from the state tort law claims.

## CONCLUSION

The court will adopt the magistrate judge's recommendation for the reasons set out in his thorough opinion with the exception of his recommendation to deny Defendants' summary judgment motion on Saul E. Lea's Section 1983 claim and state tort law claims. The court will grant summary judgment on these claims.